USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/19/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
                                                             :   **OPINION AND ORDER**
IN RE PETITION OF NATIONAL SECURITY                          :   **UNSEALING GRAND JURY**
ARCHIVE, AMERICAN HISTORICAL                                 :   **TESTIMONY OF DAVID**
ASSOCIATION, AMERICAN SOCIETY OF                             :   **GREENGLASS AND MAX**
LEGAL HISTORY, ORGANIZATION OF                               :   **ELICHTER**
AMERICAN HISTORIANS, SOCIETY OF                              :
AMERICAN ARCHIVISTS, AND SAM                                 :   08 Civ. 6599 (AKH)
ROBERTS FOR ORDER DIRECTING RELEASE                          :
OF GRAND JURY MINUTES                                        :
                                                             :
                                                             :
------------------------------------------------------------ x

ALVIN K. HELLERSTEIN, U.S.D.J.:

  Petitioners – a non-profit institution, four national associations of historians and archivists, and a journalist – seek the release of grand jury records related to the prosecutions in this Court of Ethel and Julius Rosenberg. For the following reasons, the petition is granted.

## BACKGROUND

  In 1950, a federal grand jury impaneled by this Court indicted Julius and Ethel Rosenberg of conspiracy to commit espionage by passing information about the atomic bomb to agents of the Soviet Union. The following year, they were tried and convicted, partly based on the testimony of Ethel Rosenberg's brother and alleged co-conspirator, David Greenglass. The Rosenbergs were sentenced to death and, on June 19, 1953, they were executed. Subsequently, in interviews with journalist Sam Roberts of the New York Times, Greenglass claimed to have lied at trial about his sister's involvement in order to protect his wife, Ruth Greenglass. According to Greenglass, it was likely Ruth, not Ethel, who typed up his notes, but government attorneys were threatening to prosecute Ruth unless David testified against Ethel. *See, e.g.,* Sam Roberts, The

1

<u>Brother: The Untold Story of Atomic Spy David Greenglass and How He Sent His Sister, Ethel Rosenberg, to the Electric Chair</u> (2002).

In January 2008, Petitioners petitioned this Court to unseal grand jury records relating to the Rosenbergs' indictments.[1] After briefing and oral argument, I granted Petitioners' request with respect to the grand jury transcripts of all witnesses who were either deceased, had consented to the release of the transcripts, or were presumed to be indifferent or incapacitated based on their failure to object. *See* Order Regulating Proceedings, *In re Nat'l Sec. Archive*, Misc. No. 11-188 (Part I) (S.D.N.Y. Jul. 23, 2008); Summary Order, *In re Nat'l Sec. Archive*, No. 08-cv-6599 (S.D.N.Y. Aug. 26, 2008). That release covered 43 of the 46 grand jury witnesses. The three remaining witnesses – Max Elichter, William Danziger, and David Greenglass – objected, and their transcripts were not released. Petitioners withdrew their motion as to Elichter and Danziger, but urged that the vital historical importance of Greenglass's testimony warranted releasing the transcripts over his objections. I denied the motion, reasoning that "the interest of a witness before a grand jury . . . in not permitting others to disclose what he said to the grand jury is an abiding value that I must respect." Tr. of Jul. 22, 2008 at 33:13-15. However, I cautioned that "[w]hether that interest will survive David Greenglass is a question I do not decide today." *Id.* at 42:25-43:15.

Now, more than six years later, the issue comes before me again, as Petitioners have renewed their motion following the deaths of David Greenglass and Max Elichter. The renewed petition does not cover William Danziger, as Petitioners have been unable to determine whether Mr. Danziger is still alive.[2] In a December 15, 2014 Order, I extended the

---

[1] Although the Government would likely have to disclose Greenglass's grand jury testimony if the trial were held today, the Rosenberg trial preceded the enactment of the Fed. R. Crim. P. 26.2 and the Jencks Act, 18 U.S.C. § 3500.

[2] My 2008 ruling upholding objections to disclosure by living witnesses remains in effect, at least for the time being.

2

Government's time to respond to the renewed petition in order to allow it "to consult all potential stakeholders." Doc. No. 13 at 1. According to the Government, the Elichter family has no objection, so his testimony will be unsealed posthumously like those of previous witnesses. However, the Greenglass family continues to oppose disclosure.

## LEGAL STANDARD

"It is a tradition of law that proceedings before a grand jury shall generally remain secret." *In re Biaggi*, 478 F.2d 489 (2d Cir. 1973). This policy is intended

> (1) [t]o prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; [and] (5) to protect [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*United States v. Procter & Gamble Co.*, 356 U.S. 677, 681-82 n.6 (1958) (quoting *United States v. Rose*, 215 F.2d 617, 628-29 (3d Cir. 1954)). However, the tradition of secrecy is not absolute. *In re Biaggi*, 478 F.2d at 492. For example, Fed. R. Crim. P. 6(e)(3) allows for disclosure under certain circumstances, such as disclosure to a criminal defendant if the grand jury witness will testify against him at trial. And the Second Circuit has recognized that "there are certain 'special circumstances' in which release of grand jury records is appropriate even outside the boundaries of the rule." *In re Craig*, 131 F.3d 99 (2d Cir. 1999). One such special circumstance is significant historical interest by the public. *Id.* at 105. The determination of whether such an interest outweighs the countervailing interests in privacy and secrecy falls within the district court's discretion. *See id.* at 104 ("We note at the outset that the discretion of a trial court in deciding

3

whether to make public the ordinarily secret proceedings of a grand jury investigation is one of the broadest and most sensitive exercises of careful judgment that a trial judge can make.").

## DISCUSSION

The historical significance of the Rosenberg trial is undisputed. Their crime was called "The Crime of the Century." J. Edgar Hoover, The Crime of the Century, Reader's Digest, May 1959. In sentencing the couple to die, U.S. District Judge Irving R. Kaufman blamed their treason for the Korean War and at least 50,000 lives lost because of it. *United States v. Rosenberg*, 195 F.2d 583, 605 n.29 (2d Cir. 1952) ("I consider your crime worse than murder. . . . I believe your conduct in putting into the hands of the Russians the A-bomb years before our best scientists predicted Russia would perfect the bomb has already caused, in my opinion, the Communist aggression in Korea, with the resultant casualties exceeding 50,000 and who knows but that millions more of innocent people may pay the price of your treason."). The Rosenbergs' name is infamous to a generation of Americans who grew up during the Cold War fearing the nuclear threat posed by the U.S.S.R. The Rosenbergs were the only American civilians executed for espionage activities in that period. Many continue to believe that Ethel was innocent, although intercepted Russian cables that appear to confirm Julius's espionage activities.[3] Many historians, Petitioners included, have spent countless hours documenting the Rosenbergs' story. Many questions remain unanswered, and the public's interest remains. *See In re Craig*, 131 F.3d at 106 ("[I]f historical interest in a specific case has persisted over a number of years, that serves as an important indication that the public's interest in release of the information is substantial.").

In 2008, I found that David Greenglass's interest in preserving the secrecy of his grand jury testimony was sufficient to prevent its unsealing during his life, despite the public

---

[3] *See* Ronald Radosh & Joyce Milton, The Rosenberg File xv-xvi (2000).

4

interest in the case. But neither his posthumous interest nor the interest of his family can prevent unsealing. The Government claims that disclosure will rekindle antipathy toward the Greenglass family and thrust them into an unwanted spotlight. It argues that "the continued existence and vulnerability" of the principal parties involved and their immediate families is grounds to keep the records sealed. I do not agree. The family has lived under assumed names for fifty years. The family makes objections, not by appearing or intervening, but through a lawyer, allowing them to preserve their assumed identities. The Government fails to explain how publicity arising from the release of David Greenglass's testimony will prejudice people living under different identities, particularly since Greenglass himself publicly revealed much about his testimony over the years, apparently without repercussions for the family.

Other considerations beyond historical interest weigh in favor of disclosure as well. For example, Judge Knapp and Judge Leisure have each ordered grand jury records unsealed in other cases in part because of credible allegations of prosecutorial misconduct. *See In re American Historical Ass'n*, 49 F. Supp. 2d 274 (S.D.N.Y. 1999); *In re May*, 651 F. Supp. 457 (S.D.N.Y. 1987). In this case, David Greenglass stated in interviews that prosecutors pressured him into falsifying testimony against his sister. *See* Roberts Decl. ¶¶ 7-8. And as the Second Circuit explained, "the extent to which the grand jury material . . . has been made public is clearly relevant because even partial previous disclosure often undercuts many of the reasons for secrecy." *In re Craig*, 131 F.3d at 106. Here, Greenglass himself has been a willing interviewee on the subject of his testimony for books, newspapers, and television reports over the years.[4]

The family's contention that disclosure should be postponed until all immediate family members are deceased is not compelling. As I explained in 2008,

---

[4] *See, e.g., Cold War, Colder Brother, David Greenglass Tells CBS He Wanted to Save Himself* (Dec. 5, 2001), *available at* http://www.cbsnews.com/stories/2001/12/05/60II/main320135.shtml?source=search_story.

5

> like information, time is precious with respect to those who research. The researchers and writers have a limited life span themselves. There is a very great public interest. The public interest is best satisfied by the proper responsive disclosure of information. . . . So unless there is a good reason [cautioning against disclosure], I think I would rule to require them to be released.

Tr. of Jun. 22, 2008, at 23:5-13.

The requested records are critical pieces of an important moment in our nation's history. The time for the public to guess what they contain should end. The transcripts of David Greenglass and Max Elichter shall be made available. The testimony of William Danziger remains sealed for the time being.

## CONCLUSION

Petitioner's motion to unseal the testimonies of Max Elichter and David Greenglass before the Rosenberg grand jury is granted. The Clerk shall mark the motion (Doc. No. 10) terminated.

SO ORDERED.

Dated: New York, New York
May /*/ 2015

ALVIN K. HELLERSTEIN
United States District Judge